UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 13cr0167-01 |
| VERSUS | * | JUDGE HAIK |
| DAMIEN DESHONE GUIDRY (1) | * | MAGISTRATE JUDGE HILL |

### REPORT AND RECOMMENDATION

Before the Court are a Motion to Suppress [rec. doc. 47] and a Motion to Supress Statements [rec. doc. 51] filed by defendant, Damien Deshone Guidry ("Guidry"). An evidentiary hearing was held on the motions. Based on the evidence adduced at the hearing and the applicable jurisprudence, it is **RECOMMENDED** that both motions be **DENIED.**

### BACKGROUND

The defendant, Damien Deshone Guidry, has been indicted on one count of possession of a firearm by a convicted felon stemming from a felony traffic stop of a vehicle in which Guidry was riding as a passenger. The driver was Jarvis Victor Martin.

Officer David Stanley ("Stanley") of the Lafayette Police Department ("LPD") testified that on January 1, 2013, at approximately 2:30 a.m., he was working a traffic detail in downtown Lafayette, Louisiana when he heard a dispatch over his radio regarding the report of an unknown number of black males brandishing guns in a white Chevrolet Impala bearing license plate number AED421 directly behind a black Cadillac Escalade. A printout of the dispatch notes offered into evidence confirms Officer

Stanley's memory of the content of the dispatch.

The vehicle was reported to be approximately fifty yards down Vine Street, the one way street on which Officer Stanley was located, and headed his way. When the vehicle came into view, he and another officer, Ben Smith ("Smith"), conducted a felony traffic stop, that is, they stopped the car with weapons drawn. The officers were on the passenger side of the car and ordered the passenger, Guidry, out of the car. Guidry complied, the officers handcuffed him for their safety, then Officer Smith conducted a pat down of Guidry.

Officer Stanley testified that the driver almost immediately began to exit the vehicle. Officer Stanley ordered the driver to get back into the vehicle and moved to the driver's side of the car. Officer Stanley observed the driver bend down and toss something onto the street but, from where he was standing, Officer Stanley could not see what was thrown. Stanley testified that he heard a scraping noise, however, that sounded like metal on concrete. A gun was later located in the street with what appeared to be scrape marks.

Corporal Thomas Veillon ("Veillon"), LPD, testified that he saw Officers Stanley and Smith draw their weapons and stop the white Chevrolet Impala. After the officers secured the driver and the passenger, Corporal Veillon went up to the car and looked into the windows to make sure no one else was in the vehicle. Veillon did not see any other occupants, but he did see a semi-automatic pistol on the front passenger side floorboard,

2

in front of the seat.[1] Corporal Veillon secured the weapon and then moved to the driver's side in order to move the vehicle out of traffic. As he approached the driver's side door, he observed a pistol lying on the roadway; he seized and secured that firearm as well. Veillon ran the serial numbers of both guns through police dispatch, and found the one he discovered in the roadway had been reported stolen.

Officer Bridgette Dugas ("Dugas"), LPD, testified that she was on patrol when she was dispatched to respond to a call involving firearms. When she arrived, there were already officers on the scene. Guidry was placed in the back seat of Dugas' police unit. Officer Dugas testified that she advised Guidry of his *Miranda* rights before turning on her in-vehicle recording system. A copy of the card that contains the *Miranda* warnings that Officer Dugas uses was introduced into evidence.[2]

Officer Dugas testified that she did not ask Guidry any questions before initiating the camera and audio recording systems in her unit, and that she only initiated the recording systems because Guidry insisted on talking and giving his side of the story. The recordings from both the front-facing and rear-facing cameras were introduced into evidence. In the recordings, Guidry is heard talking about the gun being in his possession, and, on the video from the rear-facing camera, Guidry can be seen making these statements.

---

[1] It is this weapon that Guidry is charged with possessing and which he seeks to suppress.

[2] The *Miranda* card contains the standard *Miranda* advice of rights.

During portions of the recordings, Guidry is talking to Officer Dugas who responds to Guidry; during other portions of the recordings, when Officer Dugas is out of the car, Guidry is heard shouting statements regarding the gun to friends of his who were standing outside of the police unit.

Officer Dugas testified that one of the officers ran computer checks on both of the vehicle occupants and discovered that they were both convicted felons.

Special Agent Lawrence Goldsmith ("Goldsmith"), ATF, testified that his investigation revealed that the vehicle in which Guidry was riding was rented. The rental agreement, which was admitted into evidence, showed that the car was rented by a third party, Damita Kneeland, not by either of the occupants.[3]

*Motion to Suppress – Law and Analysis*

When evidence is seized in a warrantless search, the government bears the burden of showing by a preponderance of the evidence, that the search and seizure were not in violation of the Fourth Amendment.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772 (1996) (citations

---

[3] The Court found all of the officers to be highly credible witnesses.

omitted). Thus, an automobile stop is subject to the constitutional imperative that it not be "unreasonable" under the circumstances.

In the instant case, it was clearly reasonable for the officers to stop the vehicle based upon the report they received from dispatch. Clearly, the police had specific and articulable facts which, when taken together with rational inferences drawn from those facts, reasonably warranted the traffic stop and *Terry* pat down. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880 (1968).

With regard to the seizure of the gun from the front seat area of the car, the first issue is whether Guidry has standing to challenge the search of the vehicle and seizure of the gun. For the reasons which follow, the undersigned concludes that Guidry lacks standing to challenge the seizure of the weapon he is charged with possessing.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 974 (1968) (the "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure"). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134 (citations

omitted). "[S]ince the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Id*. (citations omitted).

To challenge the search of the vehicle at issue, Guidry must demonstrate that he had a legitimate expectation of privacy in the place searched, and that his expectation was reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *United States v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991).

A person has an expectation of privacy protected by the Fourth Amendment if he has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). In assessing the reasonableness of an individual's expectation of privacy, no one factor is invariably determinative. *See United States v. Haydel,* 649 F.2d 1152, 1154 (5th Cir. 1981) *(citing Rakas,* 439 U.S. 128).

The burden is on the movant to show that he has "standing" to assert the constitutional invalidity of the search and seizure of which he complains. *Rakas*, 439 U.S. 128. Because Fourth Amendment rights are personal rights which may not be vicariously asserted, a person aggrieved by an illegal search and seizure only through introduction of damaging evidence secured by a search of a third person has not had his Fourth Amendment rights infringed and, accordingly, should not benefit from the exclusionary rule. *Id.*

Passengers have no standing to challenge the search of a car's contents. *See United States v. Roberson*, 6 F.3d 1088, 1093 (5th Cir.1993) and *United States v. Grant,* 349 F.3d 192, 196 (5th Cir. 2003). Here, Guidry was the passenger in a rental car which was rented by a third party. Accordingly, he cannot claim a violation of any legitimate, reasonable expectation of privacy as a result of the search of, and seizure from, the vehicle when he had no possessory or other legally cognizable interest in the vehicle.

For the foregoing reasons, the undersigned holds that Guidry has not met his burden of showing that he had a legitimate, reasonable expectation of privacy in the white Chevrolet Impala in which he was a passenger at the time of the subject stop. Therefore, the undersigned holds that Guidry lacks standing under the Fourth Amendment to challenge the search of the vehicle and seizure of the gun.

Alternatively, even if Guidry did have standing to claim the protection of the Fourth Amendment, the gun that was seized was in plain view, and therefore the seizure of the gun falls within the "plain view' exception to the Fourth Amendment. Although the Fourth Amendment generally prohibits warrantless seizures, the "plain view" exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (citing *Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). The

incriminating nature of an item is "immediately apparent" if the officers have "probable cause" to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty. *Id.* at 407 (quoting *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir.2005)).

Here, based on the report they received from dispatch regarding the persons in this car brandishing weapons, the police lawfully stopped the car. The gun which Guidry is accused of possessing was in plain view on the floorboard in front of the front passenger seat. The gun was seen by Corporal Veillon who was checking the car to make sure there were no other occupants.

Given the nature of the dispatch, that is, that the men in the car were engaged in a possible aggravated assault with guns, the incriminating nature of the gun was immediately apparent, and the officers had probable cause to believe the gun was evidence of a crime or contraband. The police had a lawful right to seize the weapon.

Accordingly, the undersigned finds that even if Guidry had standing to bring a Fourth Amendment challenge to the search of the vehicle and seizure of the gun, the plain view exception applies and the seizure was lawful.

*Motion to Suppress Statements- Law and Analysis*

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant

"stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). A person being questioned while in custody must be warned "that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.* However, where a defendant makes a voluntary statement without being interrogated or pressured by an interrogator, the statements are admissible despite the absence of *Miranda* warnings. *Id.* at 478.

Officer Dugas testified that she advised Guidry of his *Miranda* rights before he made the statements in the recordings, and she produced the *Miranda* card that she routinely uses for that purpose. Guidry offered no evidence that would contradict Officer Dugas' testimony. The undersigned finds Officer Dugas' testimony to be credible.

Additionally, on the recording, Guidry makes statements to his friends who were standing outside the unit that echo the statements he made to Officer Dugas. These statements were clearly voluntary and obviously not made in response to questioning since Dugas was not even present.

Accordingly, the undersigned holds that Guidry was properly advised of his *Miranda* rights and that the statements made by Guidry (and recorded on the recording system in Dugas' unit) were voluntary and not made pursuant to a police interrogation.

For the above reasons, **IT IS RECOMMENDED** that the defendant's Motion to Suppress [rec. doc 47] and the Motion to Suppress Statements [rec. doc. 51] should be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Lafayette, Louisiana, September 6, 2013.

*[signature]*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent:  RTH
On:  9/6/2013
By:  MBD

10